**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-02021-PAB-MEH

ESTATE OF APRIL BLACKMON-LOGAN, by and through its personal representative, Kathy Anne Lee; and
CHRISTOPHER MISERLIAN, Individually;

       Plaintiffs,

v.

ADAMS COUNTY SHERIFF'S DEPUTY CHAD JENKINS, in his individual capacity;
ADAMS COUNTY SHERIFF RICHARD REIGENBORN, in his official capacity;
KALCEVIC LAND COMPANY;
SEVEN T. FARMS LLC;
PHILLIP TRUJILLO, Individually;
COLORADO DEPARTMENT OF TRANSPORTATION;
ESTATE OF LEAH FORD, by and through its Personal Representative Twilight Hovey; and
MICHAEL LINNEBUR

       Defendants.

_____

**ADAMS COUNTY DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**
_____

       The Estate of April Blackmon-Logan and her father, Mr. Miserlian, assert various claims against Defendants, Chad Jenkins, individually, and Sheriff Richard A. Reigenborn, officially (the "Adams County Defendants") arising out of a fatal traffic collision that tragically killed the driver of the pick-up truck, Leah Ford, and her passenger, April Blackmon-Logan.[1] Ms. Ford was driving the pickup truck after the previous driver, Defendant Michael Linnebur, was arrested by Deputy

---

[1] A nearly identical lawsuit was filed in this Court by the Estate of Leah Ford, Case No. 1:20-cv-00976-LTB. It was dismissed pursuant to Rule 12(b)(6) motions. *See Hovey v. Jenkins*, Case No. 1:20-cv-00976-LTB, ECF No. 77 (Nov. 15, 2021) (Exhibit A).

Jenkins on an outstanding warrant during a traffic stop. Deputy Jenkins then released the vehicle to Ms. Ford and allowed her to drive home with Ms. Blackmon-Logan as a passenger. Plaintiffs claim: (1) Deputy Jenkins violated April Blackmon-Logan's substantive due process rights under the Fourteenth Amendment, invoking 42 U.S.C. § 1983; (2) the lack of Sheriff's department policies or practices that could have prevented Deputy Jenkins from releasing the pick-up to Leah Ford warrant municipal liability against Sheriff Reigenborn in his official capacity under *Monell v. Dept. of Social Serv's of the City of New York*, 436 U.S. 658 (1978); and (3) both Deputy Jenkins and Sheriff Reigenborn, in his official capacity, are liable in negligence under Colorado's Wrongful Death Statute, Colo. Rev. Stat. § 13-21-201, *et seq*. The Adams County Defendants move to dismiss Plaintiffs' third amended complaint (ECF 73) pursuant to Fed. R. Civ. P. 12(b)(6).

## CERTIFICATE OF COMPLIANCE

Pursuant to D.C.Colo.LCivR 7.1(b)(2), undersigned counsel was not required to confer with Plaintiff's attorneys prior to filing this motion.

## ALLEGED FACTS

As relevant to the Adams County Defendants, Plaintiffs allege the following facts:

1.      On the night of July 26, 2019, Defendant Jenkins was acting within the course and scope of his employment as a deputy with the ACSO. (ECF 73, Compl. ¶ 12.)

2.      Deputy Jenkins initiated a traffic stop of a vehicle near the intersection of Imboden Road and East 88th Avenue, in Adams County, due to the vehicle having only one operable taillight. (*Id.* at ¶¶ 22, 31, 40.)

3.      In the vehicle were Michael Linnebur (the driver), along with Leah Ford and April Blackmon-Logan. (*Id.* at ¶ 30.)

4.      Given that Mr. Linnebur had an outstanding warrant for his arrest, Deputy Jenkins took him into custody, and placed him into his patrol car. (*Id.* at ¶¶ 42-43.)

5.      Deputy Jenkins then returned to the vehicle and instructed the girls on the proper use of the vehicle's high-beams and flashers and told them to drive home. (*Id.* at ¶¶ 47-49, 53, 74.)

6.      Deputy Jenkins did not inspect the vehicle, nor did he confirm whether Ms. Ford had a driver's license. (*Id.* at ¶¶ 50, 51, 70, 71, 73.)

7.      Deputy Jenkins did not contact dispatch or the girls' families. (*Id.* at ¶¶ 51-52, 74.)

8.      Ms. Ford agreed to drive the vehicle. (*Id.* at ¶¶ 56, 61, 63, 65.)

9.      After speaking with the girls, Deputy Jenkins returned to his patrol car, where Mr. Linnebur allegedly stated that the girls did not know where they were. Shortly thereafter, the girls drove away. (*Id.* at ¶¶ 58, 61, 74.)

10.     Deputy Jenkins (with Mr. Linnebur in custody) then drove a short distance away from where he had initiated the stop. He parked his vehicle and began speaking with a fellow deputy, which lasted for approximately 20 minutes. (*Id.* at ¶¶ 62, 64.)

11.     While this was occurring, the girls proceeded toward the intersection of East 88th Avenue and Highway 79. As Ms. Ford approached the intersection, she disengaged the vehicle's high-beams and failed to see the posted stop sign, which was "nearly invisible." (*Id.* at ¶¶ 63, 64.)

12.     The girls proceeded into the intersection without stopping and were immediately hit and killed by an oncoming semi-truck that was traveling 60 MPH on Highway 79. (*Id.* at ¶ 65.)

13.     The Adams County Sheriff's Office, under the control and supervision of Sheriff Reigenborn, does not require or train its officers to investigate or confirm during a traffic stop whether a passenger in a vehicle is licensed to drive, regardless of whether the stopped vehicle

3

may ultimately be released to that individual. Nor does it require or train its deputies to inspect stopped vehicles for defects. (*Id.* at ¶¶ 81–86.)

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must contain enough allegations of fact 'to state a claim for relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when its allegations, taken as true, allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court, however, need not accept conclusory allegations without supporting factual averments. *See Ruiz v. McDonell*, 299 F.3d 1173, 1181 (10th Cir. 2002). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quotations omitted). Thus, mere formulaic recitations of the elements of a cause of action will not suffice to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

## ARGUMENT

The Estate of April Blackmon-Logan and her father, Mr. Miserlian, assert three claims against the Adams County Defendants in connection with the accident: (1) a Section 1983 claim against Deputy Jenkins for violation of April Blackmon-Logan's substantive due process rights; (2) a *Monell* claim for municipal liability against Sheriff Reigenborn in his official capacity; and (3) a negligent wrongful death claim against Defendants Jenkins and Sheriff Reigenborn. Plaintiffs, however, have failed to allege sufficient facts to state plausible claims against the Adams County Defendants or to avoid qualified and governmental immunity.

I.   **PLAINTIFFS HAVE FAILED TO STATE A PLAUSIBLE SUBSTANTIVE DUE PROCESS CLAIM AGAINST DEPUTY JENKINS BECAUSE HE DID NOT DIRECTLY CAUSE THE INJURY TO MS. BLACKMON-LOGAN**

"The Fourteenth Amendment prohibits a [state actor] from depriving any person of life, liberty, or property without due process of law." *Hernandez v. Ridley*, 734 F.3d 1254, 1258 (10th Cir. 2013) (quotations omitted). However, "there must be an element of deliberateness in directing the misconduct toward plaintiff before the Due Process Clause is implicated." *Seamons v. Snow*, 84 F.3d 1226, 1234 (10th Cir. 1996); *see also Daniels v. Williams*, 474 U.S. 327, 331 (1986) (noting the guarantee of due process applies to "deliberate decisions"). A violation of substantive due process is therefore "not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels*, 474 U.S. at 328 (emphasis in original).

The clause is also "phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 195 (1989). Thus, it is ordinarily not a violation when the injury is caused by a third-party. *DeShaney*, 489 U.S. at 195-96 (The Due Process Clause does not protect against "invasion by private actors."). Given the allegations here, Plaintiffs' substantive due process claim appears to be based on one of two narrow exceptions to the general prohibition of due process claims predicated on the acts of third-parties: (1) the state-created danger theory, or (2) a special-relationship theory. *See Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1173 (10th Cir. 2013). Plaintiffs, however, have failed to allege sufficient facts for either theory.

A.   **Plaintiffs' Alleged Facts Are Insufficient to Invoke the State-Created Danger Exception.**

To invoke the danger-creation theory, a plaintiff must establish as a threshold matter "(1) private violence, and (2) affirmative conduct on the part of the state in placing the plaintiff in

danger." *Hernandez*, 734 F.3d at 1259. If these preconditions are met, a plaintiff must then sufficiently allege that:

> "(1) [the defendant] created the danger or increase[d] plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking."

*Id.* (quotation omitted).

First, Plaintiffs have not plausibly alleged the threshold condition of "private violence." As the Tenth Circuit has recognized, private violence "typically connotes an act involving some degree of deliberateness" on the part of the private actor who directly causes the harm. *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 928-30 (10th Cir. 2012). The "act" that was "directly responsible" for Ms. Blackmon-Logan's death was her collision with the semi-truck. The complaint, however, does not allege how the driver of the semi acted recklessly (much less *deliberately*) in colliding with Ms. Blackmon-Logan. Rather, the complaint alleges that Ms. Ford recklessly failed to stop at the posted stop sign prior to entering the intersection. (Compl., ¶ 65.)

Second, Plaintiffs have failed to allege how Deputy Jenkins' acts or omissions created the danger or increased the girls' vulnerability to the danger in some way. Deputy Jenkins is largely alleged to have omitted to do certain things, such as failing to verify licensure, insurance and registration, failing to inspect the vehicle for defects, and generally failing to apprise Ms. Ford of numerous attendant dangers. (Compl., ¶¶ 44, 46-51.) As courts have made clear, "inaction," no matter how egregious, is not a cognizable basis for relief under this theory of liability. *Villanueva v. El Paso Cty.*, 463 F. Supp. 3d 1202, 1212 (D. Colo. 2020). Deputy Jenkins did not create the alleged defects in the pick-up truck, but rather attempted to mitigate the known issue with the one

out light. Plaintiffs' allegation that Deputy Jenkins, by "order[ing] the girls to drive home" after instructing them on the proper use of the vehicle's flashers and high-beams, intended to "create a deceptively false sense of security for the girls," (Compl., ¶¶ 47-49) are entirely conclusory and implausible. Deputy Jenkins' actions regarding the headlights demonstrate a genuine concern for the girls' wellbeing, as it cannot reasonably be disputed that the proper use of the vehicle's safety equipment would have rendered the vehicle *less safe.*

Third, Plaintiffs have failed to allege how Deputy Jenkins' acts or omissions put Ms. Blackmon-Logan in the path of an obvious or known substantial risk of serious, immediate, and proximate harm. Plaintiffs do not allege that Deputy Jenkins: (1) knew the intersection of East 88th Avenue and Highway 79 was dangerous due to the allegedly near-invisibility of the stop-sign; (2) directed the girls to drive through that intersection, or (3) even knew the girls would head through it and ignore the stop sign.[2] To the contrary, Plaintiffs allege Deputy Jenkins was unaware of the girls' path of travel through the intersection because he failed to check their home addresses. (Comp., ¶ 70(i).) The third amended complaint now expressly alleges that Ms. Ford was reckless in running the stop sign at the intersection, and for not pulling over prior to reaching it. (*Id.* at ¶¶ 63, 65, 96.) But the complaint contains no allegations that Deputy Jenkins had any reason to know Ms. Ford would run the stop sign.

Finally, Plaintiffs have failed to allege how Deputy Jenkins' acts or omissions, when viewed in totality, could plausibly shock the judicial conscience. To meet this high standard, "a

---

[2] After alleging Deputy Jenkins instructed them go home (at an unknown address) (*id.* at ¶¶ 49, 53, 70(i)), the complaint now labels that as instructing them to "take a route" that "would bring them through" a "notoriously dangerous" intersection. (*Id.* at ¶¶ 64, 75, 79.) But that is not the same thing as Deputy Jenkins directing them go through a particular intersection that the Deputy personally knew was dangerous because of an allegedly invisible stop sign.

plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). Whether conduct shocks the conscience is a question of law for the Court. *See Perez v. Unified Gov't of Wyandotte Cty./Kan. City, Kan.*, 432 F.3d 1163, 1168 n.4 (10th Cir. 2005). Here, Deputy Jenkins' conduct is largely alleged to consist of omissions. At no point do Plaintiffs allege Ms. Ford or Ms. Blackmon-Logan told Deputy Jenkins they did not feel comfortable driving or riding in the vehicle, or that they were unlicensed. Deputy Jenkins' failure to verify whether Ms. Ford was licensed prior to allegedly instructing her to drive home was, at most, "ill-advised," which cannot sustain a substantive due process claim. *See Hernandez*, 734 F.3d at 1261. Because Deputy Jenkins' alleged conduct does not rise to the high level of "outrageousness," it cannot plausibly shock the judicial conscience. *See Hovey* (Exh. A), at 11.

### B. Plaintiffs' Alleged Facts Are Insufficient to Invoke the Special-Relationship Exception.

The special relationship theory "protects individuals who involuntarily enter state custody and subsequently become reliant on the State, through its agencies and officials, to provide their basic human needs, paramount among those safety." *Schwartz v. Booker*, 702 F.3d 573, 585 (10th Cir. 2012). To invoke the special relationship theory, a plaintiff must establish the state actor (1) restrained the plaintiff's personal liberty, and (2) that restraint hindered the plaintiff's freedom to act to protect herself from a third-party." *Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir. 2002).

Here, however, the level of control allegedly exercised by Deputy Jenkins did not rise to the level of a custodial relationship throughout the time Ms. Ford drove the truck. *See Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1261 (10th Cir. 1998); *Hovey* (Ex. A) at 17-19. Absent an involuntary restraint through the point of the accident, Plaintiffs cannot invoke the special-

relationship doctrine. Following the girls for some period of time after the traffic stop before ceasing to do so, Compl. at ¶¶ 104-105, does not constitute custody at the time of the accident.

## II.   DEPUTY JENKINS HAS QUALIFIED IMMUNITY FROM PLAINTIFFS' SECTION 1983 CLAIM

Qualified immunity shields government officials from Section 1983 damages suits so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When governmental officials assert qualified immunity, they create a rebuttable presumption of immunity from the plaintiff's Section 1983 claim. *See Medina v. Cram*, 252 F.3d 1124, 1129 (10th Cir. 2001). The plaintiff then bears the "heavy" burden of establishing that qualified immunity does not apply. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).

The qualified immunity analysis has two elements: (1) Whether, under the facts alleged by the plaintiff, the government officials violated a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the defendants' alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2008). "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Archuleta*, 523 F.3d at 1283. Clearly established law should not be defined "at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Rather, the dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Id.* If the plaintiff fails to satisfy any part of the qualified-immunity inquiry, "the court must grant the defendant qualified immunity." *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).

In determining whether a right is clearly established, a plaintiff must point to Supreme Court or Tenth Circuit precedent (or the clear weight of other circuit courts) that recognizes an

actionable constitutional violation in the circumstances presented. *See Schwartz v. Booker*, 702 F.3d 573, 587–88 (10th Cir. 2012). Thus, it is Plaintiffs' burden to identify a case where an official acting under sufficiently similar circumstances was held to have violated a claimant's Fourteenth Amendment rights. *See White v. Pauley*, 137 S. Ct. 548, 552 (2017). "The dispositive question is whether the violative nature of the *particular conduct* is clearly established." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015). To satisfy this element, "existing precedent must have placed the statutory or constitutional question beyond debate." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017).

Plaintiffs will be unable to provide a Tenth Circuit or Supreme Court case where an officer was held liable for a substantive due process violation under circumstances sufficiently similar to the particular conduct at issue here, whether under a danger creation theory or a special relationship theory. Nor can they demonstrate that the weight of other authority clearly establishes such violation. To the contrary, in the nearly identical lawsuit filed in this District Court by the Estate of Leah Ford against Deputy Jenkins, Judge Babcock has already determined that Deputy Jenkins' alleged conduct does not constitute a violation of the due process clause and that he is entitled to qualified immunity in the face of nearly identical allegations made by the estate of Ms. Ford. *See Hovey v. Jenkins*, Case No. 1:20-cv-00976-LTB, ECF No. 77 (Nov. 15, 2021) (Exhibit A).

## III.   PLAINTIFFS HAVE FAILED TO STATE A *MONELL* CLAIM AGAINST SHERIFF REIGENBORN IN HIS OFFICIAL CAPACITY.

Municipal defendants, such as Sheriff Reigenborn in his official capacity, are subject to liability under 42 U.S.C. § 1983 only if an underlying constitutional deprivation was the direct

result of a municipal policy, practice, or custom. *See Monell*, 436 U.S. at 694 (1978); *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010). Accordingly, municipal liability requires a preliminary showing of a predicate constitutional deprivation. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Once established, a plaintiff must then identify the particular policy, practice, or custom alleged to have been the "moving force" behind the deprivation and show how such policy, practice or custom in fact caused the deprivation. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997).

When a *Monell* claim is based on the municipality's failure to act, however, a plaintiff must show that the particular "policy" in question "was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). Thus, to maintain a claim for failure to train, a complaint must contain sufficiently specific factual allegations supporting an inference that the entity's training practices were in fact inadequate. *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003). A plaintiff must then sufficiently allege the municipality was: (1) "aware that [its] training or supervision programs were not being adequately administered," and (2) "[was] nevertheless deliberately indifferent to the risk of constitutional deprivation that would result from these inadequacies." *See Havens v. Johnson*, 2012 WL 871195, at *6 (D. Colo. Mar. 13, 2012). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Waller v. City & Cty. Of Denver*, 932 F.3d 1277, 1283–84 (10th Cir. 2019) (alleged "supervisory shortcomings," such as a failure to train/supervise, implicate the "stringent deliberate indifference standard").

Here, Plaintiffs' claim is based on allegations Sheriff Reigenborn has not trained his officers, among other things, to verify licensure of individuals who take custody of a vehicle after the previous driver is detained. (Compl., ¶¶ 81-86.) Because Plaintiffs have failed to plausibly assert a violation of the Fourteenth Amendment by Deputy Jenkins, their *Monell* claim must similarly fail. *See Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).

Plaintiffs have also failed to sufficiently allege deliberate indifference. "Plaintiff[s] [have] not shown the municipal defendants were 'on notice of the need for more or better training' and ha[ve] not pointed to a 'single incident' similar to this one." *Villanueva*, 463 F. Supp. at 1218 (quotation omitted). Plaintiffs have not alleged how Sheriff Reigenborn was on notice that his failures to instruct or train his deputies in the various alleged ways would lead to an all but certain substantive due process violation in this case. *Schneider*, 717 F.3d at 769.

Lastly, Plaintiffs' *Monell* claim fails because such claims are generally not cognizable where the alleged underlying "violation" is based on the state-created danger theory. Generally applicable "policies, practices, and customs" (like an alleged failure to train) cannot themselves meet the threshold requirements to liability under that theory given the remoteness between a generally-applicable policy or custom and theories predicted on immediate danger theories. *See Gray*, 672 F.3d at 926-27; *see also Isaacs v. Konawa Pub. Sch.*, No. CIV-20-187-KEW, 2021 WL 1229945, at *8 (E.D. Okla. Mar. 31, 2021) (dismissing *Monell* claim on these grounds). Thus, Plaintiffs' municipal liability claim against Sheriff Reigenborn should be dismissed with prejudice.

## IV.   PLAINTIFFS' WRONGFUL DEATH CLAIM AGAINST THE ADAMS COUNTY DEFENDANTS IS BARRED BY THE CGIA.

Plaintiffs' third claim for relief attempts to hold the Adams County Defendants liable under Colorado's wrongful death statute, Colo. Rev. Stat. § 13-21-201. Plaintiffs have failed to allege,

however, sufficient facts against Deputy Jenkins to give rise to a plausible inference of willful and wanton conduct necessary to survive the CGIA, Colo. Rev. Stat. § 24-10- 118(2)(a). The Sheriff in his official capacity, moreover, is absolutely immune from this claim under the CGIA.

### A. Plaintiffs Have Not Alleged Concrete Facts Sufficient to Give Rise to a Plausible Inference that Deputy Jenkins' Conduct Was Willful and Wanton.

An action for wrongful death in Colorado is "'classified as a property tort action.'" *Jones v. Hildebrant*, 432 U.S. 183, 185 (1977) (*quoting Fish v. Liley*, 208 P.2d 930, 933 (Colo. 1949)); *see Cossio v. City and County of Denver*, 986 F. Supp. 1340, 1349 (D. Colo. 1997). Under the CGIA, public employees, such as Deputy Jenkins, *see* Colo. Rev. Stat. § 24-10-103(4), are immune from liability for claims "which lie[] in tort or could lie in tort . . . which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing such injury was willful and wanton." Colo. Rev. Stat. § 24-10-118(2)(a). "[T]o be willful and wanton, public employees must be consciously aware that their acts or omissions create a danger or risk to the safety of others, and they then act, or fail to act, without regard to the danger or risk." *Gray v. Univ. of Colo. Hosp. Authority*, 284 P.3d 191, 198 (Colo. App. 2012); *see also Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994); *Hurst v. Madera*, No. No. 16-cv-01914-KMT, 2018 WL 684769, at *11 (D. Colo. Feb. 2, 2018).

To state a plausible claim, therefore, a plaintiff "must allege more than negligence: she must allege specific facts showing [that defendant] purposefully pursued a course of action or inaction that he or she considered would probably result in the harm caused." *Mondragon v. Adams Cty. Sch. Dist. No. 14*, 2017 WL 733317, at *13 (D. Colo. Feb. 24, 2017) (quotations omitted). Conclusory allegations of "willful and wanton" conduct are insufficient standing alone to survive a Rule 12(b)(6) motion. Rather, Plaintiffs must allege concrete facts that plausibly give rise to an

13

inference of "willful and wanton conduct," which is a matter to be determined by the Court. *See Iqbal*, 556 U.S. at 678; *Lincoln v. Maketa*, 176 F. Supp. 3d 1179, 1200 (D. Colo. 2016), *rev'd in part on other grounds*, 880 F.3d 533 (10th Cir. 2018).

The complaint asserts no specific facts showing Deputy Jenkins, by allegedly instructing the girls to drive home, intentionally pursued a course of action he considered would result in Ms. Ford running a stop sign and being involved in a fatal collision. Indeed, the allegations in support of this claim are either speculative or conclusory. There are no supporting factual averments, however, as to how Deputy Jenkins knew Ms. Ford was unlicensed or inexperienced, or that she would inevitably cross the intersection in question. To the contrary, the complaint alleges Deputy Jenkins failed to "ascertain where their homes were." (*Id.* at ¶ 62(i).) Deputy Jenkins' alleged conversation with Ms. Ford is pure speculation. His allegedly nefarious purpose in instructing her how to use the high-beams is implausible.

The only non-conclusory allegation as to Deputy Jenkins' knowledge concerns the girls allegedly not knowing where they were, based on what was purportedly told to him by Mr. Linnebur prior to the girls departing the scene. (*Id.* at ¶ 52.) Deputy Jenkins' knowledge of this fact does not plausibly equate to knowledge of an impending (or even probable) fatal accident. Moreover, Mr. Linnebur's alleged statement regarding the girls would have come *after* Deputy Jenkins' instruction (*i.e.*, his affirmative conduct) that they drive home, and thus it cannot be said that he engaged in such conduct with the requisite subjective knowledge of that fact. Plaintiffs' wrongful death claim against Deputy Jenkins should, therefore, be dismissed.

**B.     The CGIA Bars Plaintiffs' Wrongful Death Claim Against Sheriff Reigenborn**

The Sheriff is a state constitutional official. Colo. Const., Art. XIV, §§ 8 & 8.5. A section 1983 suit against Sheriff Reigenborn in his official capacity is tantamount to a suit against a governmental entity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65-67 (1989). The CGIA establishes sovereign immunity for public entities with respect to all tort claims, unless explicitly exempted thereunder. *See* Colo. Rev. Stat. § 24-10-106(1)(a)–(f). The Sheriff, in his official capacity, is a "public entity" within the meaning of Colo. Rev. Stat. § 24-10-103(5). Plaintiffs' claim for negligent or reckless conduct under the circumstances of this case does not fall under any of the delineated statutory exemptions. *See* Colo. Rev. Stat. § 24-10-106(1)(a)–(f); *A.B. v. City of Woodland Park*, 174 F. Supp. 3d 1238, 1248 (D. Colo. 2016). Plaintiffs' wrongful death claim against the Sheriff in his official capacity is, therefore, barred by the express provisions of the CGIA and should be dismissed with prejudice.

## CONCLUSION

WHEREFORE, the Adams County Defendants respectfully request that Plaintiffs' complaint (ECF 73) be dismissed with prejudice as to the Adams County Defendants.

DATED: January 21, 2022                    Respectfully submitted,

*s/Michael A. Sink*
Michael A. Sink
Assistant Adams County Attorney
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO  80601
Phone: (720) 523-6116
Fax: (720) 523-6114
msink@adcogov.org
*Counsel  for Adams County Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2022, I caused the forgoing to be electronically filed with the Clerk of the Court using the PACER E-Filing system which will send notification of such filing to all counsel of record.

_s/Michael A. Sink_
Michael A. Sink
Assistant Adams County Attorney
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO  80601
Phone: (720) 523-6116
Fax: (720) 523-6114
msink@adcogov.org
*Counsel  for Adams County Defendants*