**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-02021-PAB-MEH

ESTATE OF APRIL BLACKMON-LOGAN, by and through its personal representative, Kathy
Anne Lee; and
CHRISTOPHER MISERLIAN, Individually;

       Plaintiffs,

v.

ADAMS COUNTY SHERIFF'S DEPUTY CHAD JENKINS, in his individual capacity;
ADAMS COUNTY SHERIFF RICHARD REIGENBORN, in his official capacity;
KALCEVIC LAND COMPANY;
SEVEN T. FARMS LLC;
PHILLIP TRUJILLO, Individually;
COLORADO DEPARTMENT OF TRANSPORTATION;
ESTATE OF LEAH FORD, by and through its Personal Representative Twilight Hovey; and
MICHAEL LINNEBUR

       Defendants.

_____

**ADAMS COUNTY DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**
**PURSUANT TO FED. R. CIV. P. 12(b)(6)**
_____

       Plaintiffs' Response [ECF 90] in opposition to the Adams County Defendants' motion to

dismiss [ECF 82] does not establish a basis to overcome Deputy Jenkins' qualified immunity. Nor

does it advance a sufficient basis to assert a *Monell* claim against Sheriff Reigenborn. The CGIA,

moreover, bars the Plaintiffs' wrongful death claim.

**I.     DEPUTY JENKINS IS ENTITLED TO QUALIFIED IMMUNITY**

       The Plaintiffs did not suffer a violation of a clearly established constitutional right. Deputy

Jenkins is, therefore, entitled to qualified immunity and must be dismissed at this stage.

### A.  When Raised, Qualified Immunity Must Be Addressed at the Pleading Stage.

Qualified immunity may be raised on a Rule 12 motion. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery"). "To defeat the defendants' assertion of qualified immunity at the motion-to-dismiss stage, [the plaintiff] must allege sufficient facts that show – when taken as true – the defendant[s] plausibly violated h[is] constitutional rights, which were clearly established at the time of violation." *Sause v. Bauer*, 859 F.3d 1270, 1274 (10th Cir. 2017) (quotation omitted). Where a § 1983 defendant raises qualified immunity, the burden shifts to the plaintiff to show the defendant violated a constitutional right that was clearly established at the time of the alleged unlawful activity. *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009).

In this case, Plaintiffs have failed to meet their burden in showing that Deputy Jenkins violated Plaintiffs' substantive due process rights (even assuming the allegations in the complaint are presumed to be true). Moreover, Plaintiffs' have not established their alleged rights were clearly established at the time that the alleged violation occurred. Additional discovery will not alter either conclusion. And Plaintiffs point to no additional facts, the discovery of which would be legally significant. Discovery would, however, undercut the interests served by qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982).

### B.  Plaintiffs have not Stated a Plausible Substantive Due Process Claim against Deputy Jenkins.

Generally, the Due Process Clause of the Fourteenth Amendment does not impose an obligation on the state to protect individuals from the actions of third parties. *See Christiansen v. City of Tulsa*, 332 F.3d 1270, 1279 (10th Cir. 2003) (state actors are liable only for their own acts

and not the actions of third parties). Plaintiffs argue in their Response that they have sufficiently pled facts showing that each of the two exceptions to that rule—state-created danger and a special relationship—has been met. Under the governing law, however, they have not.

      1.     *The Facts Alleged by Plaintiffs are Insufficient to Invoke the State-Created Danger Exception.*

      Plaintiffs' Response makes the tenuous argument that the "private violence" at play in this case was not the conduct of Defendant Trujillo, the driver of the semi-truck that purportedly wrongfully struck and killed Ms. Ford and Ms. Blackmon-Logan but instead makes the argument that the "private violence" lies in Ms. Ford's deliberate conduct while driving the vehicle. This argument is flawed. In order to prevail on the theory that the private violence in this case was actually caused by Ms. Ford's failure to stop at a stop sign, Plaintiffs must prove that Ms. Ford's action in not stopping at the stop sign was deliberate and done with the specific intent to cause harm. *See Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 928-30 (10th Cir. 2012) (Private violence "typically connotes an act involving some degree of deliberateness" on the part of the private actor who directly causes the harm. This deliberateness assumes that the act must be done violently.[1]). As such, Plaintiffs must make plausible allegations that Ms. Ford deliberately proceeded through the stop sign with some degree of intent to cause harm.

      Plaintiffs' Third Amended Complaint fails to allege facts that, if taken as true, suggest the actions of Ms. Ford were in any way deliberate. The Third Amended Complaint is devoid of any allegation that Ms. Ford intended to cause either herself or Ms. Blackmon-Logan any harm. *See* Third Am. Compl. *passim.* Although Plaintiffs use the label "reckless" to describe Ms. Ford's

---

[1] The *Gray* Court deferred to Black's Law Dictionary, in defining "violence" which classifies the term as "physical force unlawfully exercised with the intent to harm." *Gray*, 672 F.3d at 928–30.

decision to enter the intersection, Third Am. Compl. ¶ 65, the remainder of the complaint makes clear it was because the intersection was "poorly signed" and poorly lit making the stop sign "nearly invisible." Third Am. Compl. ¶¶ 63, 64, 75, 79. Plaintiffs did not plead that Ms. Ford saw the stop sign and then made the decision to deliberately go through it, or that she even knew there was a stop sign at that particular intersection and that she recklessly went through it despite knowing she was supposed to stop. Instead, Ms. Ford accidentally failed to stop at the stop sign that then resulted in the tragic losses of life. As a Court has already determined in a related case (that Plaintiffs do not address), traffic accidents do not constitute private violence. *See Hovey v. Jenkins*, Case No. 1:20-cv-00976-LTB, 2021 U.S. Dist. LEXIS 235398, *11-12 (Nov. 15, 2021). Since Plaintiffs cannot establish that Ms. Ford's actions with regard to the stop sign were deliberately undertaken or undertaken with the intent to cause harm, they have not alleged the necessary private violence.

Further, Plaintiffs fail to show how Deputy Jenkins' actions plausibly shock the judicial conscious. As was noted in the Motion, whether conduct shocks the conscience is a question of law for the Court. *See Perez v. Unified Gov't of Wyandotte Cty./Kan. City, Kan.*, 432 F.3d 1163, 1168 n.4 (10th Cir. 2005). Again, a Court has already determined that Deputy Jenkins' actions do not shock the judicial conscious. *See Hovey*, 2021 U.S. Dist. LEXIS 235398 at *12-13. Even under the Plaintiffs' characterization of Ms. Ford's conduct, *they do not* allege that Deputy Jenkins had any reason to believe Ms. Ford would deliberately cause herself or Ms. Blackmon-Logan harm.

Plaintiffs have failed to demonstrate that Deputy Jenkins is liable for a substantive due process violation under the danger creation theory and he is entitled to dismissal of this claim.

> 2.   *Plaintiffs' Alleged Facts Are Insufficient to Invoke the Special-Relationship Exception.*

Plaintiffs have also failed to plead facts sufficient demonstrating that a special relationship was formed thereby creating liability on the part of Deputy Jenkins on a substantive due process theory. Plaintiffs argue that a custodial relationship was formed simply because Mr. Linnebur, the original driver of the flat-bed truck was taken into custody. It does not follow, however, that because Mr. Linnebur was arrested that either Ms. Ford or Ms. Blackmon-Logan were in custody.

To invoke the special relationship theory, a plaintiff must establish the state actor (1) restrained the plaintiff's personal liberty, and (2) that restraint hindered the plaintiff's freedom to act to protect herself from a third-party. *Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir. 2002). In this case, there are no plausibly pled facts that demonstrate that a custodial relationship existed between Deputy Jenkins and Ms. Blackmon-Logan at the time that the truck entered the intersection and collided with the semi-truck—at least 20 minutes after she and Ms. Ford were released from the traffic stop. *See Armijo v. Wagon Mound Pub. Sch.,* 159 F.3d 1253, 1261 (10th Cir. 1998); *see also Hovey*, 2021 U.S. Dist. LEXIS 235398 at *21-22; Third Am. Compl. at ¶ 62. Here, there are no facts indicating that Ms. Blackmon-Logan was forced to continue to ride in the vehicle with Ms. Ford after their release from the scene such that her presence in the truck would in some way amount to an involuntary restraint. To the contrary, the complaints allegation that Deputy Jenkins did not follow the girls home defeats any possible claim of a custodial relationship. *See* Third Am. Compl. ¶ 105.

Without non-conclusory and plausible facts demonstrating that Ms. Blackmon-Logan was subject to an involuntary restraint at the time of the accident, the Plaintiffs cannot invoke the special-relationship doctrine and Deputy Jenkins is entitled to dismissal of this claim.

**C.      Plaintiffs have not Shown that the Right in Question was Clearly Established.**

In determining whether a right is clearly established, a plaintiff must point to Supreme Court or Tenth Circuit precedent (or the clear weight of other circuit courts) that recognizes an actionable constitutional violation in the circumstances presented. *See Schwartz v. Booker*, 702 F.3d 573, 587–88 (10th Cir. 2012). Thus, it is Plaintiffs' burden to identify a case where an official acting under sufficiently similar circumstances was held to have violated a claimant's rights. *See White v. Pauley*, 137 S. Ct. 548, 552 (2017). "The dispositive question is whether the violative nature of the *particular conduct* is clearly established." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotation omitted); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

In support of their danger creation theory, Plaintiffs cite to *Uhlrig v. Harder,* 64 F.3d 576 (10th Cir. 1995), which in turn discusses *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989). (Resp. at 8.) Plaintiffs' reliance on *Wood*, however, is misplaced. As Plaintiffs' note, in *Wood* the Ninth Circuit found that a substantive due process violation existed when law enforcement officers impounded driver's vehicle and then left driver at 2:30 a.m. in a high crime area with no apparent means to get driver home or to a place of safety. As a result of this abandonment, the driver of the vehicle was later raped. These facts differ in important ways from the facts alleged in this case. First, neither Ms. Ford or Ms. Blackmon-Logan were abandoned by Deputy Jenkins as the vehicle they were in was not impounded or otherwise confiscated. Instead, Deputy Jenkins provided Ms. Ford and Ms. Blackmon-Logan the opportunity to transport themselves home or some other place of safety. Also noteworthy, the traffic stop did not take place in a known high crime area as was the case in *Wood.* Deputy Jenkins did not impound the vehicle that was being driven by Mr. Linnebur and leave Ms. Ford or Ms. Blackmon-Logan abandoned without a means to get home.

The facts of *Wood* differ in these important respects such that *Wood* cannot meet the clearly established requirement of the qualified immunity analysis. Subsequent Tenth Circuit decisions, moreover, have held there is no constitutional violation in situations like *Wood. See Hilliard v. City & Cty. of Denver*, 930 F.2d 1516 (10th Cir. 1991) (post-dating *Wood*, finding no clearly established law where victim was stranded by police in a high-crime area and subsequently robbed and sexually assaulted); *see also Anderson v. Worstell*, 492 F. App'x 913 (10th Cir. 2012) (finding no clearly established law where intoxicated victim had been abandoned by police and was ultimately hit by car).

In support of their special relationship theory, Plaintiffs cite to no cases involving similar factual circumstances. (Resp. at 12-13 (arguing from general principles and against the necessity of factually similar precedent).) *But see City of Tahlequah v. Bond*, 142 S. Ct. 9, *11 (Oct. 18, 2021) ("We have repeatedly told courts not to define clearly established law at too high a level of generality. It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") (quotations omitted).

Plaintiffs, therefore, have not met their burden of providing a controlling case where an officer was held liable for a substantive due process violation under circumstances sufficiently similar to the particular conduct at issue here—whether under a danger creation or a special relationship theory. Nor have they demonstrated that the weight of any other authority clearly establishes such violation.[2]

---

[2] As was noted in the Motion, in the related lawsuit filed in this District Court by the estate of the driver of the pickup, Leah Ford, against Deputy Jenkins, Judge Babcock determined Deputy Jenkins' alleged conduct does not constitute a due process violation and that he is entitled to

## II.   PLAINTIFFS HAVE FAILED TO STATE CLAIM AGAINST SHERIFF REIGENBORN IN HIS OFFICIAL CAPACITY.

Plaintiff's response regarding their claims against Sheriff Reigenborn appears to blend two different theories of liability against the Sheriff in his official capacity. (Resp. at 13-15.) Neither theory, however, is available based on the facts as alleged.

The first theory—municipal liability under *Monell*—is available if, and only if, the plaintiff can point to a *County* policy or practice that caused the injury at issue. But the *Sheriff's* policies regarding traffic stops are not the *County's* policies.[3] Plaintiffs have not pointed to (or alleged) any County policy or omissions that contributed to the injuries as alleged, nor have they alleged Deputy Jenkins was enforcing any County ordinance, regulation, or policy. Thus, the County was not a "moving force" behind the alleged injuries. *See Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997) (disallowing claim against County for its hiring decision of a sheriff). Simply put, *Monell* is not an available theory in this case.

---

qualified immunity in the face of nearly identical allegations. *See Hovey*, 2021 U.S. Dist. LEXIS 235398 *14-16.  The Court's analysis in *Hovey* applies with greater force here because Ms. Ford, the passenger, has also asserted claims for negligence against the estate of the driver as a further intervening cause. *See* Third Am. Compl. ¶¶ 63, 65, 146-57.

[3] When available, a suit against government officers in their official capacities is actually a suit against the governmental entity that employs the officers. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). But here the Sheriff is an elected constitutional county official who hires and supervises deputies pursuant to state statute. *See* COLO. CONST., Art. XIV, §§ 8 & 8.5; Colo. Rev. Stat. § 30-10-506. Adams County, which is a separate legal entity, neither employs the Sheriff, nor can it direct employment or training policies for the Sheriff's deputies. *See Myers v. Koopman*, No. 09-cv-02802-REB-MEH, 2011 WL 650328, *31-32 (D. Colo. Feb. 11, 2011); *accord McMillian v. Monroe County*, 520 U.S. 781, 793 (1997) (county sheriff may be state agent in certain circumstances). Because respondeat superior is not an available claim under Section 1983, *see Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013), any theoretical claim against the Sheriff, therefore, has to be solely in his supervisory capacity.

The second theory—supervisory liability—appears to be the primary basis for the Plaintiffs claim against the Sheriff who, they allege, failed to adequately "train" his employees. (Resp. at 13-14.) But "[s]upervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights." *Serna v. Colo. Dept' of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). "[I]t is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation." *Id.* General appeals to diffuse risks or the mere absence of training or a policy are not enough to establish supervisory liability—especially for claims involving injuries allegedly caused by private actors. Rather, the supervisor must know of a specific factual circumstance that put the Sheriff on notice that his failure to intervene would lead to "an all but certain" due process violation. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (given the degree of personal involvement, the term "supervisory liability" is something of a misnomer).[4]

Here, Plaintiffs have not alleged any facts against the Sheriff sufficient to state a claim against him, even assuming they had adequately alleged an underlying constitutional violation by Deputy Jenkins (which they did not). *See Ruegsegger v. Jefferson Cty. Bd. of Cty. Comm'rs*, 197 F. Supp. 2d 1247, 1259 (D. Colo. 2001) (no claim for supervisor liability where there is no underlying constitutional violation). As such, dismissal of the claim against Sheriff Reigenborn with prejudice is warranted.

---

[4] Given the necessity of personal involvement, there is a related issue as to whether such "supervisory liability" claims should be allowed against officials "in their official capacity," as Plaintiffs have attempted to assert here. The consequence of allowing such claims in such a form is that it circumvents the official's ability to assert qualified immunity. *Cf. Cox v. Glanz*, 800 F.3d 1231, 1239 n.1 (10th Cir. 2015).

IV.     **PLAINTIFFS' WRONGFUL DEATH CLAIM AGAINST THE ADAMS COUNTY DEFENDANTS IS BARRED BY THE CGIA.**

Plaintiffs' third claim for relief attempts to hold the Adams County Defendants liable under Colorado's wrongful death statute, Colo. Rev. Stat. § 13-21-201. As argued in Section IV of the motion to dismiss, however, the Third Amended Complaint asserts no specific non-conclusory facts showing Deputy Jenkins, by allegedly instructing the girls to drive home, intentionally pursued a course of action he considered would result in Ms. Ford running a stop sign and both girls being involved in a fatal collision. The allegations in support of those elements of the claim are either speculative or conclusory thereby entitling him to dismissal of this claim. Likewise, Plaintiffs' wrongful death claim against the Sheriff in his official capacity is barred by the express provisions of the CGIA and should be dismissed with prejudice. Plaintiffs do not address this bar to their claim against the Sheriff in their response. *See* Resp. at 15.

IV.     **CONCLUSION**

The circumstances underlying this suit are undeniably tragic. But Plaintiffs have not established a legally cognizable basis to assert claims against the Adams County Defendants. WHEREFORE, the Adams County Defendants respectfully request that Plaintiffs' Third Amended Complaint [ECF 73] be dismissed with prejudice as to them.

DATED: February 25, 2022                    Respectfully submitted,

                                            *s/Michael A. Sink*
                                            Michael A. Sink
                                            Assistant Adams County Attorney
                                            4430 S. Adams County Pkwy, Suite C5000B
                                            Brighton, CO  80601
                                            Phone: (720) 523-6116
                                            Fax: (720) 523-6114
                                            msink@adcogov.org
                                            *Counsel  for Adams County Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2022, I caused the forgoing to be electronically filed with the Clerk of the Court using the PACER E-Filing system which will send notification of such filing to all counsel of record.

<u>s/Michael A. Sink</u>
Michael A. Sink
Assistant Adams County Attorney
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO  80601
Phone: (720) 523-6116
Fax: (720) 523-6114
msink@adcogov.org
*Counsel  for Adams County Defendants*